UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARY J. COSGROVE,

    *Plaintiff*,                    CASE NO. 21-cv-10379

v.                               DISTRICT JUDGE THOMAS L. LUDINGTON
                                MAGISTRATE JUDGE PATRICIA T. MORRIS

KEVIN PETTIGREW, ET AL.,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT SAYLOR'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) AND DEFENDANT KEVIN PETTIGREW'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Dwayne Saylor's motion for summary judgment (ECF No. 33) and Defendant Kevin Pettigrew's motion for summary judgment (ECF No. 34) be **GRANTED**, dismissing claims against these Defendants **WITH PREJUDICE.**

**II.    REPORT**

    **A.    Background**

        **1. Procedural History**

On January 27, 2021, Plaintiff Cary J. Cosgrove filed a *pro se* complaint under 42 U.S.C. § 1983 pertaining to his May 17, 2019 arrest by Defendants Kevin Pettigrew and Dwayne Saylor, police officers employed by the Corunna, Michigan Police Department.

1

(ECF No. 1).  He also claimed Eighth and Fourteenth Amendment violations by Kathleen McGuckin, Tia Lang, Taylor Walter, Samuel Wells, Kurt Yerrick, and Amber Curry regarding his subsequent incarceration in the county jail.  (ECF No. 1.)  On February 25, 2021, all pretrial matters were referred to the undersigned.  28 U.S.C. § 636(b).  (ECF No. 4.).   Plaintiff's application to proceed without prepaying fees and costs ("IFP") was granted on March 1, 2021.  (ECF Nos. 2, 5).

On April 9, 2021, the District Court adopted (1) my recommendation to dismiss the official capacity claims against all Defendants, (2) my finding that Plaintiff had stated a claim against Defendants Pettigrew and Saylor, and (3) my recommendation that Plaintiff be permitted to file an amended complaint as to Defendants McGuckin, Lang, Walter, Wells, Yerrick, and Curry specifying which Defendants were responsible for what actions. (ECF Nos. 6, 8).  The District Court permitted Plaintiff to file an amended complaint on or before April 20, 2021, specifying which Defendants, other than Pettigrew and Saylor, were responsible for what constitutional violations. (ECF No. 8, PageID.38).   Plaintiff was cautioned that the failure to file an amended complaint against McGuckin, Lang, Walter, Wells, Yerrick, and Curry would result in dismissal of the claims against them.  (*Id*.). Plaintiff did not file a proposed amended complaint timely, and on May 9, 2022, the Court denied Plaintiff's untimely December 29, 2021 motion to amend. (ECF Nos. 27, 32, PageID.145-150). On June 3, 2022, Defendants McGuckin, Lang, Walter, Wells, Yerrick, and Curry were dismissed.  (ECF No. 9).

2

### 2. The Complaint's Allegations Against Defendants Saylor and Pettigrew

Plaintiff alleges that on May 17, 2019, Defendants Pettigrew and Saylor, both police officers, were dispatched to 514 ½ E. Exchange St., Owosso, Michigan where Plaintiff was located. (ECF No. 1, PageID.7). Plaintiff wanted to give a police report following an alleged assault upon him and his cousin at a bar. (*Id.*). Plaintiff alleges that Pettigrew and Saylor refused to take the police report, and instead arrested him. (*Id.*). Plaintiff further states that these Defendants beat him and caused "swelling in his neck [and] bruising on his legs arms wrist that lasted for several weeks." (*Id.*) (sic.) Plaintiff further states these Defendants "proceeded to assault" and "choke" him causing "severe bruising." Plaintiff states during his transportation to the jail, he was not wearing a seat belt and that the driver of vehicle drove "recklessly." (*Id.*) (spelling errors corrected).

### 3. Plaintiff's Deposition

Plaintiff testified that after work on May 16, 2019, he and his cousin, Brad Schneider, visited several bars, ending up at the Avenue Bar between 9 and 10 p.m. (ECF No. 34-8, PageID.494-496). They ordered a pitcher of beer and four "shots." (*Id*. at PageID.496). Plaintiff testified that they were eventually asked to leave the bar, and as they were leaving, a large individual belonging to a motorcycle club smacked him in the back of the head and told him to get out. (*Id.*). Plaintiff testified that he wanted to fight this person but Schneider convinced him they should just leave. (*Id*. at PageID.497). Plaintiff did not call the police from the bar because his bond in a pending domestic assault case required him to not be in bars. (*Id.*). He called 911 from Schneider's house, saying that he had been assaulted and wanted to make a police report. (*Id*. at PageID.498-499).

3

Plaintiff testified that he had just started drinking a 25-ounce Bud Ice at that time. When the officers arrived, he walked toward the front of the property. When Defendant Pettigrew told him to "get out of the road with a beer," Plaintiff responded that it was "private property." (*Id*. at PageID.500). He told Pettigrew that he had been assaulted by "two guys" in motorcycle vests, but Pettigrew laughed about it and walked away. (*Id*. at PageID.503). As Pettigrew was walking to his patrol car Plaintiff told him that he (Pettigrew) worked for him, adding, "Fuck you, you fat piece of shit." (*Id*. at PageID.504). Plaintiff denied having a beer in his possession. (*Id*. at PageID.505). He testified that "at some point" his beer "was handed off" to Schneider. (*Id*. at PageID.522).

Plaintiff testified that as he was walking back up to the house, the officers grabbed him, but he did not know whether Defendant Saylor touched him at that point. He said that "at some point" Saylor intervened and grabbed him, but did not know exactly when. (*Id*. at PageID.507). Plaintiff admitted that he resisted arrest, because in his opinion the arrest was unlawful. (*Id*. at PageID.506, 521). He testified that he physically resisted arrest by pulling his hands away, and that when he was taken to the ground he kept his hands under his chest to prevent being handcuffed. (*Id*.). He said that Pettigrew then applied "pressure points" on his upper body, but he could not recall whether Saylor hit, punched, or kicked him. (*Id*. at PageID.507).

Plaintiff testified that after he was handcuffed, he did not willingly walk to the patrol car, that he tried to pull away, and that he was "not one to just go." (*Id*. at PageID.508). He testified that he resisted the officers' efforts to put him in the patrol car by stretching out and rolling onto the floorboard so they could not close the door. (*Id*. at PageID.508).

4

Eventually Michigan State Troopers arrived on the scene. Plaintiff testified that he told the Troopers he wanted to be in their squad car, telling them, "[i]f you want to take me to jail, take me to jail but I'm not going to jail with Pettigrew." (*Id*. at PageID.509). Plaintiff reiterated that he resisted because Pettigrew would not tell him why he was being arrested, and he continued resisting until the State Police showed up. (*Id*. at PageID.530).

### 4. The Incident Report

Defendant Pettigrew has submitted the police incident report of May 17, 2019 as Exhibit 1 to his motion, along with his affidavit attesting that the information in the report is true and accurate. (ECF No. 34-2, PageID.393-399). The report indicates that Plaintiff was arrested for disorderly conduct and resisting a police officer. (*Id*. at PageID.393). It states that when Pettigrew arrived at the scene, Plaintiff was standing in the street, holding and drinking a tall Natural Ice beer. (*Id*. at PageID.395). The report states that Plaintiff later followed Pettigrew to the patrol car still holding the beer. He then put the beer on top of a trash can and walked back to the house, but came back out to retrieve his beer, saying "fuck you" to Pettigrew. (*Id*. at PageID.396). Pettigrew told Plaintiff that he was under arrest for disorderly intoxication. (*Id*.).

### 5. The Felony Complaint

In the felony complaint filed against Plaintiff, he was charged with two counts of assault/resisting and obstructing a police officer, M.C.L. § 750.81d(1) (one count each with regard to Officers Pettigrew and Saylor), and one count of disorderly person, M.C.L. § 750.167(1)(e). He was also charged as a habitual fourth offender, which would increase his maximum sentence from two years to fifteen years. (ECF No. 34-5, PageID.462-463).

### 6. The Preliminary Exam and Probable Cause Finding

Plaintiff's cousin Brad Schneider testified at Plaintiff's preliminary examination in the criminal charges. Schneider testified that Plaintiff was not at the curb with his beer. (ECF No. 34-4, PageID.443-444). He stated that Plaintiff had the beer in his hand "for a little while" as he talked to the officers, and that Plaintiff gave him the beer when he was arrested. He testified that this was after Plaintiff retrieved the beer from the top of the trash can. (*Id*. at PageID.450-451). He had seen Plaintiff put the beer on the trash can later retrieve it. Plaintiff picked up the beer before Pettigrew came back to arrest him. (*Id*. at PageID.452-453).

At the conclusion of the testimony, 66th District Court Judge Ward L. Clarkson found as follows:

> Well, it's pretty clear that [Plaintiff] resisted arrest. I don't—certainly, there's—he was—had alcohol where he shouldn't. He had a right to arrest him, and the—there may be a lot of trial issues, but for purposes of an examination, there's probable cause. There's plenty of evidence and he's bound over.

(*Id*. at PageID.458). *People v. Cary J. Cosgrove, 66th Dist., No. 19-ST0504*

### 7. Dismissal Without Prejudice

On the prosecutor's motion for nolle prosequi, 35th Circuit Court Judge Matthew J. Stewart dismissed the charges without prejudice. (ECF No. 34-6, PageID.466). *People v. Cary J. Cosgrove,* 35th Cir., No. 19-4062-FH.   **B.**   **Summary Judgment Standards**

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the

non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.[1]

---

[1] In his response, filed on August 16, 2022, Plaintiff argues that Defendants acted unprofessionally and should not be entitled to qualified immunity, but with the exception of pointing out that the criminal charges

7

After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

C. **Analysis**

Giving Plaintiff's *pro se* complaint a liberal construction, it can be fairly read to raise the following claims: (1) excessive force, in violation of the Fourth Amendment, against both Defendants Pettigrew and Saylor, (2) failure to intervene in a Fourth Amendment violation, against Defendant Saylor, and (3) state law claim of false arrest against both Pettigrew and Saylor.

**1. Excessive Force (Pettigrew and Saylor)**

A claim of excessive force brought by a free individual, as Plaintiff was at the time of his arrest, is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). In analyzing a claim of excessive force, the constitutional standard is the

---

against him were dismissed (which will be discussed below) he does not offer or point to any evidence to contradict the Defendants' exhibits. (ECF No. 40, PageID.585). Instead, he "request[s] that an addition to allow plaintiff time to serve defendants a request for interagtories (sic) to ask the same questions he was subjected to…." (*Id.* at PageID.587). However, the Court's Case Management and Scheduling Order entered on November 30, 2021 set a discovery cutoff date of May 27, 2022, and clearly states, "This Court will not order discovery to take place subsequent to the discovery cutoff date." (ECF No. 25, PageID.90). During the open discovery period, Plaintiff neither sought discovery nor moved to extend discovery prior to the cutoff date. His request comes too late.

Fourth Amendment's requirement of reasonableness. *Id.* That standard is objective and is applied without reference to the officer's subjective motivations. *Id.* In *Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004), the Sixth Circuit set forth the following factors to be considered:

> Courts must apply an objective standard, looking to "the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396) (brackets added).

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (abrogated on other grounds, *Marvin v. City of Taylor*, 509 F.3d 234, 246, n.6 (6th Cir. 2007) (quoting *Graham*, 490 U.S. at 396)). The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham* at 397.

Misdemeanor offenses such as possessing open intoxicants in public outdoor settings, or disturbing the peace, may not be the most serious crimes on the books. Resisting and obstructing a police officer, a felony, is more serious. It is the Plaintiff's position that he was never on public property when he was in possession of the beer, that

9

his arrest was illegal, and that he had the right to resist an unlawful arrest. However, that issue was litigated at the preliminary examination in the criminal case, and the judge found, as a matter of fact and law, that Plaintiff's arrest was lawful and that there was probable cause for all the charges.[2] That state court finding estops Plaintiff from contesting whether there was probable cause for his arrest.

The doctrine of collateral estoppel precludes relitigation of an issue of fact or law which was previously decided in a different cause of action. *Montana v. United States,* 440 U.S. 147, 153 (1979). Collateral estoppel may be raised as a defense in a § 1983 case where the prior issue of law or fact was decided in the context of a state criminal case. *Allen v. McCurry,* 449 U.S. 90, 104 (1980). Successful application of the doctrine entails four requirements: (1) the issue in the prior case is identical to the issue in the current case; (2) the issue must have been actually litigated; (3) the issue must have been necessary and essential to judgment on the merits of the prior case; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceedings. *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave., Cincinnati, Ohio,* 149 F.3d 472, 476 (6th Cir.1998).

Here, all four elements of collateral estoppel are met. In the state criminal case, Judge Clarkson found as a matter of fact that the Plaintiff "had alcohol where he shouldn't," and found that the officers had the right to arrest him. The Judge found probable cause that

---

[2] At his deposition, Plaintiff testified that he believed his arrest was unlawful because Pettigrew did not tell him what he was being arrested for. However, insofar as he also claims that he was not in possession of alcohol in a public place, his complaint may also be construed to claim that his arrest was unsupported by probable cause.

10

Plaintiff committed the offenses of resisting and obstructing police officers and disturbing the peace. These are the same issues in the present case, and they were necessary to the decision to bind Plaintiff over to Circuit Court in the criminal case. Plaintiff was represented by counsel at the preliminary exam and had a full and fair opportunity to litigate the issues.

The fact that the charges against Plaintiff were later dismissed without prejudice on the prosecutor's nolle prosequi motion (ECF No. 34-6, PageID.466) does not affect the application of collateral estoppel. "An arrest grounded in probable cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal." *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004). In *Manley v. Paramount's Kings Island,* 299 F. App'x 524, 530, (6th Cir. 2008), the Court explained as follows:

> Moreover, the law is clear: an arrest grounded in probable cause does not become invalid simply because the charges are later dropped or the defendant is acquitted. *Williams v. Cambridge Bd. of Educ.,* 370 F.3d 630, 638 (6th Cir.2004). Since res judicata would have barred Manley's § 1983 suit had the state judge found probable cause existed, *Smith v. Thornburg,* 136 F.3d 1070, 1077 (6th Cir.1998) (citing *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir.1987)), some plaintiffs in § 1983 cases will assume a double standard is being applied. However, this rule makes sense since an arrest may be grounded on probable cause even if charges are later dropped or the defendant is acquitted. *Williams v. Cambridge Bd. of Educ.,* 370 F.3d 630, 638 (6th Cir.2004).

Judge Clarkson's finding of probable cause on the charged offenses also estops Plaintiff from contesting whether he resisted and obstructed the officers. But more obviously, he *admits* that he resisted, during the initial arrest, when he resisted being handcuffed; when he refused to willingly walk to the squad car; and when he flung himself

11

on the floorboard of the squad car and prevented the officers from closing the door. Under the *Graham/Gaddis* factors, Plaintiff's active resistance to the officers is significant.

The question is whether the officers used *reasonable* force under the circumstances as perceived by them, filtering out the distorting effects of hindsight, and with due deference to their on-the-scene professional judgment. Present Defendants were confronted with a verbally aggressive and hot-tempered individual[3] who by his own admission resisted and obstructed arrest, even while handcuffed. In light of Plaintiff's self-admitted active resistance, he was "taken to the ground;" according to Plaintiff, Pettigrew applied "pressure points" to get him to comply; and because of Plaintiff's continued active resistance, there was a physical struggle to get him in the squad car, allegedly resulting in him hitting his face on the pavement.[4] Plaintiff testified that at one point he was "choked, slammed, and kneed," but could not identify who was doing this. (ECF No. 34-8, PageID.505). It cannot be said that under these fast-moving circumstances, the level of force used on Plaintiff was unreasonable or disproportionate. The Sixth Circuit has held that the reasonableness of the use of force "is partially dependent on the demeanor of the suspect." *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (internal quotation marks omitted). Here, the Plaintiff's demeanor speaks for itself. In addition, where, as here, an arrestee is actively resisting, a greater amount of force can be used than if he or she is passive or compliant. *Cf. Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir.

---

[3] At his deposition, Plaintiff, remarking on his earlier verbal altercation and hostility with defense counsel and his threat to leave the deposition (*see* ECF No.34-8, PageID. 501-503), noted "how quick [he] can get from zero to a hundred." (*Id.* at PageID.512).
[4] Plaintiff testified that he did not seek medical treatment for any of his injuries. (ECF No. 34-8, PageID.524-525).

2015) ("Our cases firmly establish that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest") (emphasis in original); *Eldridge v. City of Warren,* 533 F. App'x 529, 535 (6th Cir.2013) (it is excessive force to tase someone whose "noncompliance was not paired with any signs of verbal hostility or physical resistance"). Courts have found even more aggressive uses of force than in the present case reasonable when the individual resists arrest. *Cf. Hagans v. Franklin County Sheriff's Off.,* 695 F.3d 505, 509 (6th Cir. 2012) (tasering plaintiff reasonable where he resisted being handcuffed); *Williams v. Sandel,* 433 F. App'x 353, 363 (6th Cir.2011) (not excessive force to tase the suspect *thirty-seven* times (and use batons and pepper spray) because he actively resisted arrest by refusing to be handcuffed); *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. 2012) (using taser reasonable where, after plaintiff was wrestled to the ground, he refused to move his hands from under his body); *Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010)(same); *Carter v. Carter*, 728 F. App'x 419, 423 (6th Cir. 2018) (noting that an officer's four "modest punches" were "not constitutionally infirm" because "*some* amount of force was necessary to secure [the suspect's] arrest") (emphasis in original) (citing *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015)); *Parsons v. City of Ann Arbor,* No. 20-10486, 2022 WL 989320, at *7 (E.D. Mich., March 31, 2022) (Murphy, J.) (given the active resistance and motions to flee, the officer reasonably used force where plaintiff alleges he was thrown face first into concrete with his hands behind his back).

Given the Plaintiff's own testimony regarding his highly aggressive level of non-compliance and active resistance, no rational trier of fact could find that the amount of

13

force used was objectively unreasonable. Summary judgment should be granted to both Defendants Pettigrew and Saylor on Plaintiff's Fourth Amendment excessive force claim.

In addition, notwithstanding Plaintiff's failure to support a triable claim that *anyone* used excessive force against him during his arrest, he was unable to identify anything other than minimal force by Defendant Saylor. Rather, as will be discussed below, he primarily claims that Saylor is liable on a theory of failure to intervene in Pettigrew's use of force. (ECF No. 34-8, PageID.508) ("Like I've said many times, Saylor's main role in this case is a failure to protect."). But as to the excessive force claim, Plaintiff has not shown Saylor's personal involvement. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("[A] plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions,' has violated the Constitution.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Finally, both Defendants are entitled to qualified immunity on the excessive force claim. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

14

As discussed above, there was no constitutional violation in this case. Hence, the Defendants are entitled to qualified immunity. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) ("Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally protected right") (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

### 2. Failure to Protect (Saylor)

A police officer can be liable for failure to intervene or to protect during the application of excessive force when: "(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (internal quotation omitted).

First, as discussed above, Defendant Pettigrew did not commit a Fourth Amendment violation because he did not use unreasonable excessive force in effecting the arrest of an actively and aggressively resisting subject. Therefore, Saylor could not have perceived that unconstitutionally excessive force was being used. *See Brown v. Scaglione*, No. 20-10192, 2022 WL 3051550, at *9 (E.D. Mich., Aug. 1, 2022) (Cleland, J.) (citing *Craft v. Billingslea*, 459 F. Supp. 3d 890, 912 (E.D. Mich. 2020) ("[A]s there was no constitutional violation, the other officers present cannot be held on a failure to intervene claim.").

In addition, given the level of the Plaintiff's own active resistance, both verbal and physical, Pettigrew's difficulty in effecting the arrest, and the rapidly escalating situation, it cannot be said that Saylor had the opportunity or means to intervene on Plaintiff's behalf.

Nor would it have been reasonable or wise for him to do so. Saylor is entitled to summary judgment on the failure to protect claim.

### 3. False Arrest (Pettigrew and Saylor)

Under Michigan law, an essential element of a claim of false arrest or false imprisonment is the absence of probable cause. *See Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351 (2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, *i.e.*, the arrest was not based on probable cause"); *see also Tope v. Howe*, 179 Mich. App. 91, 105, 445 N.W.2d 452 (1989) (probable cause is an element of a false arrest claim). As discussed above, because of the finding of probable cause at Plaintiff's preliminary examination in his criminal case, he is estopped from asserting a lack of probable cause in the present case. *Allen,* 449 U.S. at 104. Because there was probable cause to support Plaintiff's arrest both for disorderly conduct and resisting and obstructing, any claim for false arrest fails.

These Defendants are also protected by Michigan governmental immunity. In *Odom v. Wayne County*, 482 Mich. 459 (2008), the Michigan Supreme Court held that under M.C.L. § 691.1407(3), governmental employees (such as police officers) are entitled to governmental immunity from intentional torts if: "(1) the employee's challenged acts were undertaken during the course of employment and the employee was acting, or reasonably believed he or she was acting, within the scope of his or her authority, (2) the acts were undertaken in good faith, or were not undertaken with malice, and (3) the acts were discretionary, rather than ministerial in nature." *Id*. at 480. "Granting immunity to an

16

employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions." *Id*. at 476.

A police officer's decisions "regarding how to respond to a citizen, how to safely defuse a situation, and how to effectuate the lawful arrest of a citizen who resists are clearly discretionary." *Norris v. Lincoln Park Police Officers*, 292 Mich. App. 574, 579, 808 N.W.2d 578 (2011).  Moreover, "a police officer is entitled to immunity if he acts in good faith and honestly believed he had probable cause to arrest, even if he later learns that he was mistaken." *Latits v. Phillips*, 298 Mich.App. 109, 116 (2012).

Again, Plaintiff's arrest was supported by probable cause, the Defendant officers were acting within the scope of their authority, and there has been no showing, other than Plaintiff's subjective belief, that their actions were unreasonable, taken in bad faith, or done maliciously. They are entitled to governmental immunity.

### D.    Conclusion

For the reasons set forth above, **IRECOMMEND** that Defendant  Dwayne Saylor's motion for summary judgment (ECF No. 33) and Defendant Kevin Pettigrew's motion for summary judgment (ECF No. 34) be **GRANTED**, dismissing claims against these Defendants **WITH PREJUDICE.**

## III.    REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

    Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 26, 2022                                  S/ PATRICIA T. MORRIS
                                                                                     Patricia T. Morris
                                                                                     United States Magistrate Judge